# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**DUANE E. ANDERSON, and JEANNE C. ANDERSON**,<br><br>Debtors. | Case No. **21-10115-BPH** |
| **DUANE E. ANDERSON, and JEANNE C. ANDERSON**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**STATE OF MONTANA and MONTANA DEPT. OF NATURAL RESOURCES AND CONSERVATION**,<br><br>Defendants. | Adv. No. **21-ap-01005-BPH** |

## MEMORANDUM OF DECISION

In this adversary proceeding, Defendants, Montana Department of Natural Resources and Conservation ("DNRC") and the State of Montana ("State"), filed a "Motion for Summary Judgment" and "Memorandum in Support of Motion for Summary Judgment" on June 13, 2022, at ECF No. 121 (collectively "Defendants' Motion"). The Andersons filed a "Brief in Opposition to Defendants' Motion for Summary Judgment" on July 11, 2022, at ECF No. 126 ("Andersons' Response"). Defendants filed a "Reply in Support of Defendants' Motion for Summary Judgment" on July 25, 2022, at ECF No. 127 ("Defendants' Reply").

### I. Jurisdiction

This adversary proceeding was initiated when the Andersons removed pending litigation in state court to this Court pursuant to 28 U.S.C. § 1452(a), 28 U.S.C. §§ 157(b)(2)(B), (O), and 1334(b). This Court has original and exclusive jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), (e) and Standing Order BMM-20 ("Standing Order").

1

"[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Exclusive jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1334(e)(1). The "district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction – of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). *Gardner v. United States* (*In re Gardner*), 913 F.2d 1515, 1518 (10th Cir.1990) ("A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end.").

The Standing Order refers to the bankruptcy judges of this district, "all cases under Title 11 of the United States Code and all proceedings arising under or arising in or related to a case under Title 11."

## II.     Background and Summary of Arguments

Prior to filing their bankruptcy petition, the Andersons leased certain tracts of land from DNRC. The specific leases in dispute are Montana state leases Nos. 447, 449, 4351 and 6168 ("State Leases"). DNRC contends that effective April 1, 2020, the State Leases were cancelled due to default in payment of annual rent by the Andersons. The Andersons challenged DNRC's termination of the leases. After informal efforts failed, Andersons filed a complaint alleging the State Leases between Andersons and DNRC were unlawfully terminated by DNRC. Complaint, ¶¶ 1-3, Mar. 18, 2021, Mont. First Jud. Dist. Ct., CDV 2021-278 ("State Court Litigation"). The causes of action asserted in the Verified Complaint (ECF No. 1-1) ("Verified Complaint") include breach of contract, tortious breach of the implied covenant of good faith and fair dealing, injunctive, and declaratory relief. *Id*. Specifically, Andersons requested injunctive relief to enjoin DNRC from taking any action to lease the subject land; and a declaration that the State Leases are valid and should be reinstated. In addition to this relief, Andersons sought damages and attorney fees. The State Court Litigation was in its infancy when Andersons filed their bankruptcy petition.

This Court previously entered an Order denying Plaintiff's Motion for Summary Judgment and Granting DNRC's Cross Motion for Summary Judgment with respect to the due date of the grazing lease payments under the State Leases. Memorandum of Decision at ECF No. 109 ("Decision"); Order at ECF No. 110 ("Order"). Although the Decision makes clear that, under the plain language of the State Leases as well as the statutes and administrative rules presented in the relevant briefing, the grazing lease payment was due on or before April 1, 2020, the Decision and Order expressly state that "the issue of whether the cancellation of the State Leases was valid, and the parties' respective interests in the State Leases has not been adjudicated and is reserved for trial or further motions." *Id*. Accordingly, the Defendants' Motion seeks summary judgment and a determination that the State Leases were terminated as a matter of law. Andersons' Response requests the Court deny Defendants' Motion and asserts that Defendants' argument fails to account for previous instances where DNRC exercised discretion in accepting payments after April 1.

On August 22, 2022, once Defendants' Motion had been fully briefed, the Court issued an Order, noting, "DNRC's Statement of Uncontested Facts ("SUF"), specifically ¶¶ 14-34, at ECF No. 121-2, is not seriously contested."[1] The Court further observed:

> Although Andersons submitted a "First Supplemental Statement of Genuine Issues," with their Response, nothing in it contradicts DNRC's SUF in a relevant or material way. Instead, Andersons focus on: the March 26, and March 30, 2020 Directives issued by Governor Bullock (collectively referred to as the "COVID Directives"); and Duane Anderson's health and service to his country. Andersons' emphasis on Duane Anderson's health and service to the country effectively arouses the Court's sympathy, but it does not persuade it that either genuine issues of material fact preclude summary judgment, or that DNRC is not entitled to judgment as a matter of law.[2]

The Court provided Andersons an opportunity to persuade the Court otherwise and set a hearing for argument. The Court outlined the issues to be addressed:

1. Review the COVID Directives and specifically identify for the Court the precise language in the COVID Directives they contend modifies the State Leases;

2. Identify in the Verified Complaint, or other pleading (with a specific citation to the Court's docket), any indicia of Andersons' claim for a contractual breach of the Covenant of Good Faith and Fair Dealing;

3. If Andersons persuade the Court a claim for a contractual breach of the Covenant of Good Faith and Fair Dealing was pled and maintained, Andersons shall specifically identify those facts (with a specific citation to the Court's docket), Andersons contend are indicia of DNRC's failure to act honestly and observe reasonable commercial standards of fair dealing with the lease agreements . . .

The Court held a hearing on Defendants' Motion, Andersons' Response, and Defendants' Reply on September 26, 2022.

### A. Defendants' Motion

Defendants' Motion requests summary judgment asserting that the State Leases were properly cancelled for nonpayment pursuant to the plain language of the State Leases and Mont. Code Ann. § 77-6-506(1). Defendants' Motion specifically requests the Court enter summary judgment "declaring that State Lease Nos. 447, 449, 4351 and 6168, were properly cancelled as a matter of law; denying Plaintiffs' breach of contract claim; concluding that cancellation of the Leases was not arbitrary, capricious, or unlawful; declaring that Plaintiffs have no interest in the 3,104.25 acres of school trust land previously leased pursuant to State Lease Nos. 447, 449, 4351 and 6168; and, denying any and all other relief requested by Plaintiffs."

---

[1] ECF No. 128
[2] *Id.*

Defendants support their request by arguing that, despite Andersons mailing the check before the April 1, 2020, deadline, the check was only "conditional payment" of the grazing rent. Defendants persuasively argue that payment was conditioned upon Andersons having sufficient funds in their account to fulfil the payment obligation. Defendants assert the lack of funds in the account justified termination of the State Leases as a matter of law.

### B. Andersons' Response

The Andersons' Response requests summary judgment be denied presenting three alternative supporting arguments. First, Andersons assert genuine issues of fact remain as to whether Defendants breached the terms of the State Leases as modified by executive orders and directives. Second, Andersons argue genuine issues of fact remain as to whether Defendants' failure to make reasonable payment accommodations during the COVID-19 pandemic constitutes a breach of the duty of good faith and fair dealing. Finally, Andersons assert genuine fact issues remain as to whether the Andersons were excused from timely performance due to COVID-19 impracticability.

### C. Defendants' Reply

Defendants' Reply addresses the Anderson's Response and provides supporting argument in favor of granting Defendants' Motion. Defendants' Reply requests the Court reject the arguments presented in Anderson's Response, alleging the issues have either already been resolved or were inadequately pled in the Verified Complaint. Specifically, Defendants' Reply objects to the three arguments presented in Anderson's Response as "collateral attacks" that are "contrary to the law of the case" and "contrary to the requirements of notice and pleading." In the alternative, Defendants' Reply addresses the merits of each argument raised in the Andersons' Response by asserting Andersons failed to present genuine issues of material fact.

## III. Facts[3]

1. DNRC mailed Plaintiffs an invoice of $6,671.20 due on the State Leases on or before March 1, 2020.[4] The invoice stated:

   Under the provisions of section 77-6-506 AND 77-1-208, MCA, this rental is due and payable by March 01, 2020. A penalty of $25 per lease is assessed on payments received AFTER March 01, 2020. If payment in full is not received by April 01, 2020, the entire Lease/License is canceled.[5]

2. The Andersons failed to pay the State Leases by March 1, 2020.[6]

---

[3] The findings and conclusions outlined in the Court's prior Summary Judgment Memorandum of Decision are incorporated by reference. ECF No. 109.
[4] ECF No. 121-2 at ¶ 15
[5] ECF No. 121-4, Exhibit 13
[6] ECF No. 121-2 at ¶ 16

4

3. The DNRC sent a letter to the Anderson's on March 17, 2020, to put the Anderson's on notice that, "[i]f full payment, including the late fee, is not received by April 1st, the entire lease is cancelled."[7]

4. Andersons received the letter and signed the certified receipt.[8]

5. On April 2, 2020, DNRC received Check No. 12184 for $6,771.20 from Checking Account xxx9686 ($6,671.20 rental due + $100.00 penalty). The check was signed by Duane Anderson and dated March 30, 2020.[9]

6. DNRC processed the check because it was dated March 30, 2020, and delivered in an envelope postmarked on or before April 1, 2020.[10]

7. On March 30, 2020, Plaintiffs had $63.90 in Checking Account xxxx9686.[11]

8. Plaintiffs did not have a line of credit, loan, or agreement with Rocky Mountain Bank ("RMB") to honor or cover Check No. 12184 for the $6,771.20 grazing rent and penalty.[12]

9. Rocky Mountain Bank notified the Andersons on April 3 and 7, 2020, that they had insufficient funds in their account for the attempted payments.[13]

10. DNRC sent a notice to the Andersons on April 21, 2020, stating that the State Leases had been cancelled by operation of law for non-payment pursuant to Mont. Code Ann. § 77-6-506(1).[14]

11. However, in the April 21, 2020, letter, the DNRC gave the Andersons an opportunity to reinstate the State Leases if the Andersons paid the $6,671.20 original invoice amount, plus an additional $6,671.20, for a total reinstatement payment of $13,342.40.[15]

12. The letter was received and the certified receipt was signed.[16]

13. The letter notified Plaintiffs that the reinstatement payment needed to be post-marked no later than May 8, 2020, for re-instatement of the cancelled leases.[17]

---

[7] *Id.* at ¶ 17; ECF No. 121-5
[8] *Id.*
[9] *Id.* at ¶ 20
[10] *Id.* at ¶ 21
[11] *Id.* at ¶ 22
[12] *Id.*
[13] *Id.* at ¶¶ 24, 26
[14] *Id.* at ¶ 29
[15] *Id.* at ¶ 30
[16] *Id.* at ¶ 31
[17] *Id.*

14. The Andersons failed to make the payment to reinstate the State Leases by May 8, 2020.[18]

## IV. Summary Judgment Standard

Pursuant to Civil Rule 56[19] and Rule 7056, to prevail on a motion for summary judgment the movant must show that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. The presiding court "may not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial." *In re Wank*, 505 B.R. 878, 886 (B.A.P. 9th Cir. 2014). A dispute is genuine if "there is evidence for a reasonable fact finder to hold in favor of the non-moving party, and the fact is 'material' if it might affect the outcome of the case." *Id.* The moving party bears the burden to establish the absence of genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* If the moving party satisfies its burden, the non-moving party may prevail if the non-moving party, "affirmatively show[s] that a material issue of fact remains in dispute." *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985). The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).

## V. Analysis

This Court determined in its Memorandum of Decision at ECF No. 109 that the last possible date the underlying grazing lease payment [rent] was due was April 1. As set forth in § 77-6-506(1), "[i]f the full rental and the $25 penalty are not paid by April 1, the entire lease is cancelled." Neither the statutory language nor its application are ambiguous as to the effect of a failure to timely pay rent to the DNRC. DNRC did not receive full payment for the Leases plus the $25 penalty fee prior to or on April 1, 2020.[20] Andersons' leases were cancelled when the payment was not received in compliance with the statutory deadline.[21] The singular issues to be considered in this action are: (1) whether DNRC breached the State Leases when it notified Andersons the State Leases were terminated; and, (2) the parties' respective interests in the Leases.

The Court must grant Defendants' request for summary judgment on all counts of Andersons' Verified Complaint. The record shows there are no genuine issues of material fact that remain in dispute. The Court cannot discern any basis upon which a reasonable fact finder could rule in favor of Plaintiffs. Despite drawing all reasonable inferences in favor of Plaintiffs, the record shows Plaintiffs did not make the State Lease payment when required under the

---

[18] *Id.* at ¶ 34
[19] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88.
[20] ECF No. 52-1 at ¶¶ 11-13
[21] *Id.*

6

applicable statute and the consequence of failing to do so was cancellation of the State Leases. DNRC is entitled to judgment as a matter of law.

### A. Defendants did not breach the express provisions of the State Leases.

#### 1. The Eviction Moratorium did not modify the Andersons' obligation under the State Leases to pay the grazing lease rental payment on or before April 1, 2020.

The Andersons allege a breach of contract claim in Count I of the Verified Complaint. Andersons' Breach of Contract claim is premised on the flawed argument that the Eviction Moratorium[22] modified the State Leases payment due date. When interpreting an executive order or directive, courts look to the plain language used in its ordinary meaning and consider the entirety of the order or directive to determine executive intent. *See Gildroy v. Anderson*, 507 P.2d 1069, 1071 (Mont. 1973); *see also* Mont. Code. Ann. §§ 1-4-101 and 1-2-101. Although executive orders and directives have the "force of law,"[23] the court cannot bend the unambiguous language of an order to conform to a single party's interpretation of such an order. *See Meyer v. Jacobsen*, 510 P.3d 369, 381-87 (Mont. 2022).

As a preliminary matter, the Court notes that the interpretation of the Covid Directives is solely a legal issue. The Eviction Moratorium includes a limitation on evictions, residential foreclosures, utility and internet cancellation. Relevant to the analysis is the section, "Limitations on Evictions." The first sentence of the first paragraph states:

> For the duration of this Directive and except as provided herein, there shall be no actions for termination of a tenancy, possession, unlawful holdover, or rent involving a residential dwelling tenancy.[24]

It is uncontested that the State Leases did not involve a residential dwelling tenancy. Instead, the State Leases were utilized for agriculture and grazing purposes.

---

[22] On March 26, 2020, Governor Bullock executed a "Directive Implementing Executive Orders 2-2020 and 3-2020 providing measures to stay at home and designating certain essential functions" (ECF No. 17-10) ("Stay at Home Order"). A few days later, on March 30, 2020, Governor Bullock executed a "Directive Implementing Executive Orders 2-2020 and 3-2020 providing measures to limit foreclosures, evictions, and disconnections from service" (ECF No. 17-12) ("Eviction Moratorium"). Both the Stay at Home Order and the Eviction Moratorium (collectively, as extended by subsequent directives, "Covid Directives") implement the purposes stated in Executive Orders 2-2020 (ECF No. 140-1) and 3-2020 (ECF No. 140-2), that declare a state of emergency in response to COVID-19. The Court notes that the issues surrounding the Covid Directives and whether they apply only to "residential" leases primarily relate to the Eviction Moratorium.
[23] Mont. Code Ann. § 10-3-104(1).
[24] Eviction Moratorium (ECF No. 17-12 p. 2).

The Eviction Moratorium does not limit the State or its Agencies from terminating agricultural or grazing leases. The Eviction Moratorium states:

> These measures are necessary to secure the <u>temporary housing needs</u> of Montanans during the emergency and to implement the requirement that Montanans, where possible, <u>occupy and remain in their homes or places of residence</u> during the emergency to prevent the spread of COVID-19.[25]

The stated purpose of the Eviction Moratorium was to "prevent the spread of COVID-19." *Id.* Prohibiting termination of residential dwelling tenancies comports with this purpose. The plain language and purpose of the Eviction Moratorium applied only to residential leases.

At the hearing Andersons endeavored to "specifically identify for the Court the precise language . . . they contend modifies the State Leases," as directed by the Court in its prior order setting argument. Rather than direct the Court to precise language that modified the State Leases, Andersons argued that the Covid Directives were ambiguous. The Court was encouraged to resolve the ambiguity in manner that would benefit Andersons. Despite having considered these arguments along with scrutinizing the relevant language of the Covid Directives, this Court is not persuaded that the Covid Directives are ambiguous. To the contrary, the language cited above and considered by this Court is plain, clear, devoid of ambiguity and has no impact on the State Leases. The scope of the measures was limited to residential leases. Andersons' lease with the DNRC was not a residential leased.

At the hearing Andersons touched on the "vulnerable population" component and argued that this Court should construe that language as modifying the payment date. Even if the Andersons had pled such facts, Mr. Anderson's classification proves irrelevant for this analysis as the Eviction Moratorium applied only to residential dwellings. Moreover, the Verified Complaint does not allege a termination of tenancy of their residential dwelling.[26]

While the Court sympathizes with Mr. Anderson's medical condition, the Eviction Moratorium did not modify the payment due date of the State Leases, or Mont. Code Ann. § 77-6-506(1), which explicitly states, "If the rental is not paid before March 1, a $25 penalty must be imposed on the lessee. If the full rental and the $25 penalty are not paid by April 1, the entire lease is canceled." Both the April 1 payment due date and the consequences of failing to timely pay are set forth in the statute. The payment deadline was not subject to modification by the DNRC, and it was not modified by the Eviction Moratorium.

---

[25] *Id.* (emphasis added).
[26] ECF No. 1-1 at 9 (indicates that the Andersons had paid their separate homesite lease rental payment to DNRC); *see also* ECF No. 17-14 (DNRC confirming receipt of homesite lease rental payment from Andersons)

### 2. Andersons did not pay the grazing lease rental on or before April 1, 2020.

Defendants' argument that Andersons' mailing of the check was merely "conditional payment" of the obligation under the State Leases is well taken. 60 Am Jur.2d, *Payment* §§ 34 and 35; *United States Nat. Bank of Red Lodge v. Shupak*, 172 P. 324, 326 (Mont. 1918) ("Giving a worthless check does not pay a debt.") A check does not constitute payment if there are insufficient funds in the account to draw upon. *Id.* Since Andersons had insufficient funds in their account when the check was presented, the check did not constitute payment. Accordingly, the Andersons failed to make the grazing lease payments due under the State Leases by the deadline of April 1, 2020.

Andersons' inability to make the payment was the singular cause of the termination of the State Leases. Defendants' Motion and statement of undisputed material facts at ECF No. 121-2 ("Defendants' SUF"), demonstrate that the Andersons lacked sufficient funds in their account on April 1, 2020, when the payment was due. The 30(b)(6) witness testified on behalf of Rocky Mountain Bank ("Bank"), that when the check was presented for payment on April 3, 2020, the account was overdrawn for "insufficient funds." Bank Deposition at ECF No. 121-7 ("Bank Depo") 45:11-19. Moreover, Andersons did not have a line of credit, loan, or agreement with the Bank to honor or cover the check. Bank Depo 19:9-20:2; 25:25-27:4; 42:3-44:5; and 83:12-84:1. Finally, Andersons did not qualify for an override of the "not sufficient funds" determination. Bank Depo 57:9-10; 76:3-77:2; 83:19-84:1. These facts are not disputed.

Andersons' Response does not contest the fact that they lacked sufficient funds. Instead, Andersons rely on the flawed argument that the Eviction Moratorium modified or otherwise prohibited termination of the grazing leases. The State Leases were automatically terminated on April 1, 2020, after the Andersons mailed the payment to DNRC with insufficient funds in their bank account. The State Leases were "automatically cancelled by operation of law when the rent was not paid by the statutory deadline." *Jeppeson v. State*, 667 P.2d 428, 430 (Mont. 1983). Such a termination, as expressly provided for in the State Leases and in Mont. Code Ann. § 77-6-506, was not a breach of any express terms of the contract. Accordingly, subject to below, summary judgment in favor of Defendants is proper on Count I for Breach of Contract in the Verified Complaint.

### B. The Andersons' "claim" for contractual breach of implied covenant of good faith and fair dealing fails.

Andersons take the position that the operative complaint includes a "contractual breach of the implied covenant of good faith and fair dealing," because every contract includes the implied covenant, so a contractual breach of the implied covenant of good faith and fair dealing was pled and evidenced by Count I, "Breach of Contract." To avoid summary judgment, Andersons' Response asserts that genuine issues of material fact remain as to whether DNRC breached the duty of good faith and fair dealing implied in the State Lease contracts as DNRC failed to make reasonable payment accommodations during the COVID-19 pandemic.[27]

---

[27] ECF No. 126 at 11-14

The only explicit references to the covenant of good faith and fair dealing in the operative complaint are found at paragraph 63 and Count II, "Tortious Breach of Implied Covenant of Good Faith and Fair Dealing," in the Verified Complaint. Andersons consented to the dismissal of Count II prior to the action's removal to this Court. The parties do not dispute the "Tortious Breach of Implied Covenant of Good Faith and Fair Dealing," was abandoned and subject to dismissal. On its face, the Verified Complaint does not include a separate count for "Contractual Breach of the Implied Covenant of Food Faith and Fair Dealing." Scrutiny of the Verified Complaint suggests Andersons recharacterization of their breach of contract claim as a contractual breach of the covenant of good faith and fair dealing is untenable.

### 1. The Andersons failed to plead contractual breach of implied covenant of good faith and fair dealing

Under Montana law, all contracts contain an implied covenant of good faith and fair dealing. *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990). The applicable standard of compliance required by the implied covenant is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *Id.* (quoting Mont. Code Ann. § 28-1-211). By definition, the implied covenant applies "only in relation to the express terms of an underlying, independently enforceable contract." *House v. U.S. Bank N.A.*, 481 P.3d 820, 831 (Mont. 2021) (citing *Beaverhead Bar Supply, Inc. v. Harrington*, 805 P.2d 560, 564 (Mont. 1991)). It is assumed that "[e]ach party to a contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach." *Story,* 791 P.2d at 775.

When a breach of the covenant exists, a breach of contract exists. *Id.* However, there is no requirement that a party breach an express contractual term for there to be a breach of the implied covenant. *Id.* Proof an alleged breach of the implied covenant requires that the offending party acted under the contract terms in a way that is a "dishonest or unreasonable deviation from prevailing commercial standards of reasonableness in the trade, thereby denying the non-breaching party the benefit of the bargain." *House*, 481 P.3d at 831 (citing *Story*, 791 P.2d at 774-75).

The Verified Complaint was initially filed with the State Court. Under M. R. Civ. P. 8(a), a complaint must:

> . . . . . contain a short and plain statement of the claim showing that the pleader is entitled to relief, along with a demand for the relief sought. The purpose of Rule 8(a) is to provide the defendant fair notice of the claim and the grounds upon which it rests, so that the defendant may prepare a responsive pleading.

*Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 608 (Mont. 2014) (internal citations omitted). Nothing in the Verified Complaint could be characterized as fairly providing notice Andersons were asserting a claim for contractual breach of the implied covenant of good faith and fair dealing sufficient that DNRC could prepare a responsive pleading. Under Plaintiff's construction of M. R. Civ. P. 8(a), merely asserting a breach of contract claim is sufficient for

pleading the separate cause of action, breach of the implied covenant of good faith and fair dealing. The Court can find no authority for this proposition.

Under Montana law, a contractual breach of the implied covenant of good faith and fair dealing does not "require or depend on the breach of an express contract term." An ordinary breach of contract claim requires "breach of an express or implied contract duty or obligation." *Tin Cup Cty. Water & Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 68-70 (Mont. 2008). Although a breach of the covenant will result in a breach of the contract, the theories are distinct and represent different claims requiring different proof. This Court is unaware of any authority that permits a party at the pleading stage to cast a contractual breach of the covenant of good faith and fair dealing as merely breach of contract claim.

Andersons' argument that a claim for contractual breach of the covenant of good faith and fair dealing is the basis of their "breach of contract" claim, rings hollow. Contrasting the allegations in paragraphs 68 and 76 of the Verified Complaint undermines Andersons' immediate characterization of their claims. The alleged factual basis for Andersons' breach of contract claim involves the failed payment. In part, Andersons allege:

> . . . . . the Ranch Leases were cancelled despite Plaintiffs paying and then again attempting to pay the grazing lease amount. Defendant's actions, including the refusal to perform its obligations and performance actions do not conform to the Ranch Lease requirement."[28]

The allegations here do not sound in dishonesty or unreasonableness, only that DNRC's conduct deviated, ("do not conform") from the contract. These are the substantive allegations under the heading, "Breach of Contract."

Conversely, Paragraph 76 of the Verified Complaint, under the heading, "Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing," specifically alleges the DNRC did not act honestly and failed to observe reasonable commercial standards of fair dealing. If Andersons had intended to allege a contractual breach of the covenant of good faith and fair dealing, they would have either done so: (a) at the time the Verified Complaint was filed; (b) prior to the amendment deadline set by this Court; (c) or requested leave to amend from this Court. [29] Andersons have not done either (a), (b) or (c). To date Andersons have not sufficiently pled a claim for contractual breach of the covenant of good faith and fair dealing, and the Court will not divine one where one does not exist.

---

[28] ECF No. 1-1, ¶68.

[29] Following the filing of the Verified Complaint, Andersons had ample opportunity to amend their complaint if in fact Andersons had intended to pursue a contractual breach of the implied covenant of good faith and fair dealing claim. The record before this Court leaves this Court convinced Andersons only wish to plead a contractual breach of the covenant of good faith and fair dealing, with the benefit of hindsight. In the Court's scheduling Order dated January 1, 2022, at ECF No. 40, the parties were given until February 4, 2022, to file a motion to amend the pleadings.

### 2. However, even if under the minimalist requirements of notice pleading a claim for contractual breach of the covenant of good faith and fair dealing was pled, DNRC is entitled to summary judgment.

The Montana Supreme Court has stated, "[w]e are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement." *Tvedt v. Farmers Ins. Group of Cos*, 91 P.3d 1, 8 (Mont. 2004). Implied terms "should never be read to vary express terms." *Id.* Hence, under Montana law, [i]mplied contractual provisions "will not be applied where . . . express provisions govern." *Id.*

Pursuant to *Tvedt*, there is no construction of the covenant of good faith and fair dealing that would bar DNRC from applying Mont. Code Ann. § 77-6-506 to the facts before it. Indeed, although the administrator of the state lands, it is ultimately Mont. Code Ann. § 77-6-506 that dictated the termination of the State Leases, not the DNRC. *See*, *Jeppeson*, 667 P.2d at 430. The uncontested facts show that the State Leases were cancelled for non-payment pursuant to Mont. Code Ann. § 77-6-506, and for no other reason.

Even if Andersons had sufficiently pled a contractual breach of the covenant of good faith and fair dealing theory as they now assert, there is nothing in the record upon which this Court could draw an inference favorable to Andersons for summary judgment purposes. As noted above, Andersons' claims hinge on allegations related to the check that was mailed on March 30 to the DNRC, and DNRC's handling of the check once it learned there were insufficient funds to cover the check. In part, Andersons allege the "Ranch Leases were cancelled despite Plaintiffs paying and then again attempting to pay the grazing lease amount."[30] The record disproves this fiction. Andersons never paid the grazing lease amount. The record shows that on March 30, Andersons had no ability to timely pay the State Leases.[31] This is undisputed. Placing a check in the mail for $6,771.20, when the funds available in the account are $63.90 cannot be construed as timely payment under any legal theory.[32]

The undisputed facts show the DNRC acted honestly, reasonably, fairly and importantly, complied with the State Leases and applicable statutes. DNRC provided Andersons with no less than 3 opportunities to pay or reinstate the State Leases. When Andersons failed to make the initial payment, DNRC explained the payment was due by April 1, and if it was not received the lease would be cancelled. When the payment was not timely made, the State Leases were cancelled, and Andersons received further notice of their right to reinstate the State Leases. Andersons did not reinstate the State Leases. Having received multiple notices that explained when payment was due and the consequences of failing to pay, the allegation that DNRC

---

[30] ECF No. 1-1, ¶68.
[31] ECF No. 121-5, ¶¶ 22, 24, and 26.
[32] Depending on the circumstances, it may violate Mont. Code Ann. § 45-6-316, "Issuing a bad check."

violated the covenant of good faith and fair dealing is baseless. The undisputed facts disprove such a suggestion or claim.

The implied covenant of good faith and fair dealing cannot resurrect the State Leases or otherwise trump Mont. Code Ann. § 77-6-506. Cancellation of the leases was automatic and a function of the plain language of the statute, not DNRC. At best DNRC was merely a functionary charged with providing notice, which it did. DNRC's administrative actions were consistent with the statute. DNRC is entitled to judgment as a matter of law on the causes of action pled in the Verified Complaint, as well as any "inartfully pled" claim for contractual breach of the implied covenant of good faith and fair dealing.

## Conclusion

There are no genuine issues of material fact that preclude granting summary judgment and DNRC has established that is entitled to judgment as a matter of law. DNRC is entitled to judgment on all counts of Andersons' Verified Complaint. Further, Andersons' have no interest in the underlying State Leases. An Order will be entered separately.

Dated November 28, 2022.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana